UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ALISON FINANCE S.A.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-1702** |
| **AMERICAS BULK TRANSPORT (BVI) LTD.** | **SECTION "B"(2)** |

### ORDER AND REASONS

Before the Court is a Motion to Vacate Attachment (Rec. Doc. No. 15), submitted by Defendant Americas Bulk Transport (British Virgin Islands), Ltd. ("BVI"). In response, Plaintiff Alison Finance S.A., (Liberia) ("Alison Finance") submitted a Memorandum in Opposition to the Motion to Vacate (Rec. Doc. No. 19). Subsequently, Americas Bulk filed a Reply Memorandum in support of its Motion to Vacate (Rec. Doc. No. 23). Accordingly, and for the reasons articulated below,

**IT IS ORDERED** that Americas Bulk Transport's Motion to Vacate Attachment (Rec. Doc. No. 15) be **GRANTED,** and that the Clerk of the Court be **DIRECTED** to release the funds held in the Court's registry.

### PROCEDURAL HISTORY

Americas Bulk Transport is a company that charters vessels to transport bulk cargo, such as iron, bauxite, and grain. (Rec. Doc. No. 15-2, at 5). BVI was registered with the Louisiana Secretary of

State to conduct business in Louisiana on March 19, 2009. (Id.). Since that time, approximately two to three vessels per month chartered by BVI have called on ports in Louisiana. (Id.). Recently, the transportation of bauxite from Jamaica to Gramercy, Louisiana, has resulted in approximately seventy-five additional port calls in Louisiana per year. (Id.). Samuel Rein, BVI's tax consultant, arranged for Corporate Creations Network, Inc. ("Corporate Creations") to become BVI's agent for service of process in the Eastern District of Louisiana on March 14, 2011. (Rec. Doc. No. 15-4, at 1).

Alison Finance, a foreign corporation and owner of the M/V IRIDA, entered into two separate charter party agreements with BVI in 2010. (Rec. Doc. No. 19, at 2). Alison Finance claims BVI breached those agreements. (Id.). As a result, Alison Finance alleges that it suffered $693,819.62 in economic loss, which BVI refused to pay. (Id.).

On March 29, 2011, Alison Finance commenced an arbitration action against BVI, requesting that the latter post one hundred and thirty percent of the amount claimed, or $867,000.00, as security for any future arbitration award. (Id.). Nevertheless, Alison Finance alleges that BVI refused to provide any security pursuant to the arbitration. (Id.). Later, around June 28, 2012, Alison Finance determined that BVI had time-chartered the M/V BULK CAJUN, and that the vessel was located within the jurisdiction of this Court. (Id., at 2-3).

On June 28, 2012, Alison Finance began investigating whether

BVI could be found within this district for the purpose of attaching the cargo aboard the M/V BULK CAJUN. (Id., at 3). In order to identify a business address or reference to BVI, Alison Finance claims to have performed various internet searches on Google, Yellow Pages, and the Equasis Online Directory. Those searches yielded only the discovery of a Rhode Island office affiliated with BVI. (Rec. Doc. No. 19, at 3). Then, Alison Finance conducted a search via the Online Corporation Database of the Louisiana Secretary of State, which identified BVI as "inactive." (Rec. Doc. No. 19-2, at 1). Its authority to do business in Louisiana had been revoked by the Secretary of State of June 19, 2012. (Id., at 2). The Database also listed two registered agents for BVI — one in Baton Rouge and one in New Orleans. (Id., at 1).

Subsequently, representatives of Alison Finance in the United Kingdom contacted BVI to notify that company of the pending attachment of its assets and to request that security be paid for any arbitration award. (Rec. Doc. No. 19, at 5). As a result of the discussion surrounding the attachment, Rein, BVI's tax consultant, was alerted to BVI's "inactive" and "revoked" status in Louisiana and paid the $130.00 fee required to renew the company's registration with the Louisiana Secretary of State. (Rec. Doc. No. 15-2, at 5). BVI's status became "active" around 12:18 p.m. on June 29, 2012, immediately following payment of that fee, and the renewed status was displayed on the Online Corporation Database. (Id., at 6). At around 2:12 p.m., Alison Finance filed its verified complaint (Rec. Doc. No. 1) and attendant affidavit and Motion for

3

Writ of Attachment (Rec. Doc. No. 2) before the Court. This Court issued a Writ of Attachment and Garnishment for the bunkers and marine fuel onboard the M/V BULK CAJUN following expedited review on June 29, 2012. (Rec. Doc. No. 12).

The next day, on June 30, 2012, Alison Finance, through the U.S. Marshals, executed the Writ of Attachment. (Id.). At that time, Rein learned that the M/V BULK CAJUN's bunkers and marine fuel had been attached and the ship detained. (Id.). Following the attachment, on July 2, 2012, the Court granted BVI's motion to deposit $703,656.11 into the registry of this Court in order to release the M/V BULK CAJUN of attachment. (Rec. Doc. No. 11). Thereafter, BVI filed the instant Motion to Vacate Attachment. (Rec. Doc. No. 15). In response, Alison Finance filed a Memorandum in Opposition. (Rec. Doc. No. 19). In support of its Motion, BVI filed a Reply Memorandum (Rec. Doc. No. 23).

## LAW AND ANALYSIS

**A. The Attachment at Issue Should be Vacated because BVI Was Found Within the District, per Rule B.**

Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture of the Federal Rules of Civil Procedure ("Rule B") dictates when and how a plaintiff may obtain a maritime attachment order. Said plaintiff may succeed with a maritime attachment order if: (1) the plaintiff has a valid *prima facie* admiralty claim against a defendant; (2) the defendant is not found

within the district; (3) the defendant's property is located within the district at issue, and (4) there is no other legal bar to the attachment. Fed. R. Civ. P. Supp. Adm. Rule B. At issue in this case is the meaning of the second requirement that the defendant is not found within the district. Rule B(1)(a) states that:

> *If a defendant is not found within the district when a verified complaint praying for attachment and the affidavit required by Rule B(1)(b) are filed*, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property—up to the amount sued for—in the hands of garnishees named in the process.

Fed. R. Civ. P. Supp. Adm. Rule B.

The Fifth Circuit has announced a two-part test for determining whether a defendant can be found "within the district." First, a determination must be made as to whether the defendant can be found within the district for jurisdictional purposes. *LaBanca v. Ostermunchner*, 664 F.2d 65, 67 (5th Cir. 1981). Second, it must be determined whether the defendant can be found within the district for service of process. *Id*. In this case, only the second question is at issue. Rule B explicitly states and the Fifth Circuit has held that the relevant time for determination of whether the defendant can be found within the district is the *time of filing verified complaint*. Fed. R. Civ. P. Supp. Adm. Rule B(1)(a); *see also Ostermuncher*, 664 F.2d at 67; *Heidmar, Inc. v. Anomina Ravennate Di Armanento*, 132 F.3d 264, 268 (5th Cir. 1998). In this case, the status of BVI's registration in the State of Louisiana was "revoked" on the morning of June 29, 2012 but was reinstated to "active" at

5

around 12:18 p.m.[1] (Rec. Doc. No. 15-4, at 6). According to this Court's Live Docket Activity Report for June 29, 2012, Alison Finance's Motion for Order Authorizing the Issuance of a Writ of Attachment and Garnishment was filed and entered on that day at 2:23 p.m. (See Rec. Doc. No. 2). Thus, at the time Alison Finance's complaint was filed, BVI was registered to do business in the State of Louisiana.

Plaintiff, Alison Finance, responds that various courts have recognized a "due diligence" standard applicable to a party's efforts to determine whether a defendant is found within the district, and have upheld attachments even where the defendant was in fact present where that presence could not have been discovered through diligent efforts by the plaintiff. (Rec. Doc. No. 19, at 9). In this case, Plaintiff's due diligence argument is moot. Under LSA-R.S. 12:313(C), "[u]pon revocation [of a certificate of authority to transact business in the State of Louisiana by the Secretary of State], the authority of the corporation to transact business in this state shall cease, but the authority of its registered agent in this state to accept service of process shall continue." Alison Finance itself has submitted documentation of its search on the website of the State of Louisiana for BVI's registration status.

---

[1] A conversation occurred between BVI and Alison Finance, in which Alison Finance notified BVI that the former would proceed with attaching BVI's assets if no agreement could be reached. The conversation occurred at approximately 11:31 a.m. (New Orleans time) on June 29, 2012 and appears to have been the trigger that prompted BVI's tax consultant, Mr. Samuel Rein, to review BVI's state registrations, notice that the Louisiana registration had lapsed on June 19, 2012 and take action to reactivate the registration.

(Rec. Doc. No. 19-2). Although that document lists BVI as inactive as of 12:44 p.m on June 29, 2012 and further lists BVI's certificate of authority as revoked, the document also lists registered agents for the company in Baton Rouge and New Orleans. (Id.). Thus, Alison Finance was, before the time of its filing, aware that BVI had a registered agent and under Louisiana law, a registered agent may continue to accept service of process even where the company's certificate of authority has been revoked. LSA-R.S. 12:313(C). Thus, BVI was present in the State of Louisiana for the purposes of service of process at the time Alison Finance filed its Rule B motion to attach.

Accordingly, **IT IS ORDERED** that BVI's Motion to Vacate Attachment (Rec. Doc. No. 15) be **GRANTED** and that the Clerk of the Court be **DIRECTED** to release the funds held in the Court's registry pursuant to the instant matter.

New Orleans, Louisiana, this 14th day of January, 2013.

UNITED STATES DISTRICT JUDGE